The MUSKIN SHOE COMPANY, a Maryland corporation,

v.

UNITED SHOE MACHINERY CORPORATION, a New Jersey corporation.

Civ. No. 9717.

United States District Court
D. Maryland.

Sept. 22, 1958.

Robert L. Wright, Milton M. Gottesman, Washington, D. C., and Moses W. Rosenfeld, Baltimore, Md., for plaintiff.

Ralph M. Carson, Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, and John Henry Lewin, Venable, Baetjer & Howard, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

In this action under sec. 4 of the Clayton Act, 15 U.S.C.A. § 15, plaintiff seeks to recover damages alleged to have been sustained as a result of defendant's violation of sec. 2 of the Sherman Act, 15 U.S.C.A. § 2. The court found such violation in United States v. United Shoe Machinery Corp., D.C.D.Mass., 110 F. Supp. 295, affirmed per curiam 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910, hereinafter called the government's suit. Plaintiff contends that as a result of defendant's monopolization of the shoe machinery market plaintiff was unable to purchase certain machines or to lease them from others, but was compelled to lease them from defendant at an unreasonably high rental. Defendant has moved, pursuant to Rule 56(b), F.R.Civ. P., 28 U.S.C.A., for a partial summary judgment based on the federal statute of limitations, 15 U.S.C.A. §§ 15b, 16(b), to eliminate from the case all payments made under leases entered into more than four years before this action was filed. Two questions are presented: (1) Whether the federal statute or the Maryland statute applies; (2) Whether the period of limitations runs from the execution of the several leases, as defendant contends, or from each periodic payment thereunder, as plaintiff contends.

Plaintiff is a Maryland corporation with its principal office in Baltimore; it manufactures women's shoes in Pennsylvania and sells them in interstate commerce. Defendant, a New Jersey corporation doing business in Maryland, supplies various kinds of machines to shoe manufacturers. The nature of defendant's business is set out in Judge Wyzanski's findings of fact in the government's suit, 110 F.Supp. 295, particularly at pages 297, 314–322, 323–329, 338–340.

Judge Wyzanski concluded that defendant had not violated sec. 1 of the Sherman Act, but had violated sec. 2 of that Act. See 110 F.Supp. 341 et seq.[1] Plaintiff states in its complaint

1. His "Opinion on Alleged Violations" appears at pages 338–346; his "Opinion on Remedy" at pages 346–351, and the Final Decree at pages 351–354. See also

that it will rely on the judgment in the government's suit as prima facie proof of the violation of the antitrust laws herein alleged. 15 U.S.C.A. § 16(b); Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 71 S.Ct. 408, 95 L. Ed. 534.

The impact of defendant's monopoly on its customers was discussed by Judge Wyzanski, 110 F.Supp. at pages 301, 322–325, 340–341. He found that defendant had no competition for many of its machines and that it had charged higher rentals for non-competitive machines than it had charged for competitive machines, although he found no evidence that defendant had secured a monopoly profit on its total operations or that defendant's customers were dissatisfied with the overall system.

In his decree he declared that all leases which included a ten year term, a full capacity clause, or other specified features, were means whereby defendant had monopolized the shoe machinery market. Such leases are now generally called "A leases". As a remedy for this aspect of the case, the decree set up a program designed to dissipate defendant's monopoly position and to encourage competition. It directed that defendant should not offer any machine for lease unless it also offered the machine for sale upon terms which would not constitute substantial discrimination in favor of leasing. It directed that defendant's new leases should not provide for a term of more than five years, nor contain other proscribed features. It required the defendant, after conferring with the government, the National Shoe Manufacturers' Association, and any of its lessees that had intervened in the case, to present to the court a detailed plan for terminating all outstanding leases. It provided, however, that none of those requirements should take effect until six months after the Supreme Court's decision on appeal. The decree further provided that at the end of a

ten year trial period a report should be made to the court of the effect of the decree in operation. If it then appears that the decree has not established "workable competition" either party may file a petition for modification in the light of "the then structure of the shoe machinery market and defendant's power within that market". 110 F.Supp. 295, 354.

On May 17, 1954, the date on which the Supreme Court affirmed the decree, defendant notified its lessees that the use of A leases would be discontinued immediately both for new shipments and renewals. The notice stated that machines held under A leases could be returned to defendant or retained under some other arrangement consistent with the decree. As required by the decree, defendant thereafter negotiated with the government and with representatives of the shoe manufacturing industry, and worked out a detailed plan for the termination of all outstanding leases, which was approved by the court on June 1, 1955. New forms, known as "B leases", have been used since January 1, 1955.

The complaint alleges that up to the time this action was filed defendant continued to exact monopoly prices with respect to machines for which it had no competition. In plaintiff's answer to interrogatories submitted herein, it has listed the leased machines which it claims were not available from competing manufacturers during the four years before this action was filed. In its answer to interrogatories and in its briefs, plaintiff has limited its damage claims to rentals, royalties, and purchase prices paid for such machines during that four year period, i. e. May 31, 1953, to May 31, 1957. Plaintiff's answers to interrogatories indicate that a majority of the leases were executed before the four year period.

Up to this point there is no dispute about the facts. Plaintiff contends, however, that at any time after an A lease

was made, plaintiff could have terminated it by notice and by return of the machine. Defendant disputes this contention, but argues that it involves a question of law rather than a question of fact, namely, the proper construction of the written leases. A typical lease agreement has been made a part of this record; a similar lease was analyzed by Judge Wyzanski at pages 314–318. Defendant's "departures" from the lease provisions were discussed at pages 320–321. Plaintiff has adopted those findings of fact and conclusions of law. It appears from those findings and conclusions and from an examination of the lease form that the lessees had no legal right to terminate the lease agreements unilaterally, but that defendant always granted such right as a matter of grace, subject to commutation charges and other return charges. Those charges varied with the circumstances of the proposed return, and the government relied on them to show defendant's monopoly power. There is no genuine issue as to any material fact which would prevent the granting of a partial summary judgment under Rule 56.

██ 1. *Whether the federal statute of limitations applies in this case.*

The following chronology will be helpful in considering this question:

| | |
|---|---|
| December 15, 1947 | – Government suit filed (D.Mass.) |
| February 18, 1953 | – District court decree |
| May 17, 1954 | – Supreme Court opinion filed |
| June 23, 1954 | – Supreme Court mandate issued |
| July 7, 1955 | – Federal statute of limitations enacted |
| January 7, 1956 | – Federal statute of limitations took effect |
| May 31, 1957 | – This action filed (D.Md.). |

Until 1955 there was no federal statute of limitations governing cases such as this, although 15 U.S.C.A. § 16 contained a paragraph providing:

"Whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, the running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended during the pendency thereof."

On July 7, 1955, Congress adopted an act, 69 Stat. 283, which added sec. 15b to Title 15 and amended sec. 16, eliminating the paragraph quoted above and enacting a new provision set out below:

"§ 15b. *Limitation of actions*

"Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this section and sections 15a and 16 of this title shall be revived by said sections."

"§ 16. *Judgment in favor of Government as evidence; suspension of limitations*

\*    \*    \*    \*    \*    \*

"(b) Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limita-

tions in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided, however,* That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued."

Sec. 4 of the Act of July 7, 1955, provided that the act should take effect six months after its enactment, i. e. on January 7, 1956. The instant action was not begun until May 31, 1957, despite the fact that the Supreme Court mandate in the government's suit had been issued on June 25, 1954; therefore, if the federal statute applies, all causes of action which accrued more than four years before May 31, 1957, are barred. Since this action was not filed during the period of suspension, nor within six months after the enactment of the act of July 7, 1955, plaintiff cannot avail itself of the provision of sec. 16(b).

As noted above, plaintiff limited its claim to payments made within four years before this action was filed. Plaintiff now argues, however, that the federal statute does not apply in this case, but that the Maryland three year statute [2] applies; and that under that statute, tolled during the pendency of the government's suit by 15 U.S.C.A. § 16 as it stood before the act of July 7, 1955, plaintiff can recover for payments made since 1946. However, persuasive authority, the legislature history of the 1955 act, and applicable principles of the law of limitations, all show that the federal statute applies in this case. Solinski v. General Electric Co., D.C.D.N.J., 149 F.Supp. 784; Goodfriend v. Kansas City

Star Co., D.C.W.D.Mo., 158 F.Supp. 531; LaRouche v. United Shoe Machinery Corp., D.C.D.Mass., 166 F.Supp. 633, Vol. 2, U.S.Code Congressional and Administrative News, 1955, p. 2328 et seq.; 84th Cong., 1st sess., HR Rep. 422; Seal v. American Legion Post No. 492, 7 Cir., 245 F.2d 908; Wrightman v. Boone County, 8 Cir., 88 F. 435; Kozisek v. Brigham, 169 Minn. 57, 210 N.W. 622, 49 A.L.R. 1260; Steele v. Gann, 197 Ark. 480, 123 S.W.2d 520, 120 A.L.R. 754; Cunningham v. Commonwealth, 278 Mass. 343, 180 N.E. 147. The report of the Senate Committee was reviewed in Goodfriend v. Kansas City Star Co., supra.

In Solinski v. General Electric Co., supra, the court said: "It is well settled that Congress 'may prescribe a limitation for the bringing of suits where none previously existed, as well as shorten the time within which suits to enforce existing causes of action may be commenced, provided, in each case, a reasonable time, taking all the circumstances into consideration, be given by the new law for the commencement of suit before the bar takes effect.' Wheeler v. Jackson, 137 U.S. 245, 11 S.Ct. 76, 78, 34 L.Ed. 659. The amendment establishing the new limitation in the Clayton Act, passed July 7, 1955, was not to become effective until six months after its enactment. This left ample time for the plaintiff in the case at bar for the institution of suit. Suit was not begun until October 26, 1956, many months after the date upon which the amendment under discussion became effective." 149 F.Supp. at page 787.

Against these authorities and the established principles upon which they rely, there is only one reported opinion, International Shoe Machinery Co. v. United Shoe Machinery Corp., D.C.D. Mass., 167 F.Supp. 93, which is not persuasive, and was qualified by a later memorandum on motion for rehearing.

This action is controlled by the federal statute and all causes of action

2. Ann.Code of Md., Art. 57, sec. 1.

which accrued before May 31, 1953, are barred.

*2. Whether the period of limitations runs from the execution of the several leases or from each periodic payment thereunder.*

Plaintiff contends that it is entitled to collect damages in this action for all payments made during the four years before this action was filed, because, as plaintiff alleges, defendant still had monopoly power with respect to the listed machines and such power was actually used to collect a monopoly price.

However, plaintiff's attorney conceded at the hearing that the leases as such were not illegal. This concession was required by Judge Wyzanski's decision, affirmed by the Supreme Court, as well as by the general law. The payments called for by the leases were legally collectible. Bruce's Juices, Inc. v. American Can Co., 330 U.S. 743, 750, 67 S. Ct. 1015, 91 L.Ed. 1219; Bowden Concrete Products, Inc., v. Besser Co., 6 Cir., 249 F.2d 52; Small Co. v. Lamborn & Co., 267 U.S. 248, 45 S.Ct. 300, 69 L.Ed. 597; Wilder Manufacturing Co. v. Corn Products Co., 236 U.S. 165, 35 S.Ct. 398, 59 L.Ed. 520; Connolly v. Union Sewer Pipe Company, 184 U.S. 540, 22 S.Ct. 431, 46 L.Ed. 679.

██ It is the general rule that a cause of action accrues when a person is injured, i. e. when his rights are invaded. The statute of limitations begins to run on the date on which a person first has the right to bring action for such injury, not as each item of damage resulting from such injury is sustained. To allow successive actions as the damages develop would nullify the statute of limitations. Emich Motors Corp. v. General Motors Corp., 7 Cir., 229 F.2d 714, 719 (on remand)[3]; Miller Motors, Inc. v. Ford Motor Co., D.C.M.D.N.C., 149 F.Supp. 790, 794, affirmed, 4 Cir., 252 F. 2d 441; Alexander Milburn Co. v. Union Carbide & Carbon Corp., 4 Cir., 15 F.2d 678, 680–683; Park-In Theatres v. Paramount-Richards Theatres, D.C.D.Del., 90 F.Supp. 727, affirmed per curiam 3 Cir., 185 F.2d 407, certiorari denied 341 U. S. 950, 71 S.Ct. 1017, 95 L.Ed. 1373; Steiner v. 20th Century-Fox Film Corp., 9 Cir., 232 F.2d 190, 194–195. And see generally Pickett v. Aglinsky, 4 Cir., 110 F.2d 628, 630; 73 H.L.Rev. 1177, 1200, and 110 A.L.R. 1178.

██ The injury referred to in 15 U.S.C.A. § 15 means an act or occurrence which impairs the economic position of the plaintiff. The question in this case is whether the injuries occurred when the respective leases were executed or when each successive payment under the several leases were made.

"Each time the plaintiff's interest is invaded by an act of the defendants, he has a new cause of action. For that particular invasion he is at once entitled to recover as damages, not only for the injuries he suffers at once, but also for those he will suffer in the future from the particular invasion, including what he has suffered during and will suffer after the trial. Lawlor v. Loewe, 235 U.S. 522, 536, 35 S.Ct. 170, 59 L.Ed. 341." Momand v. Universal Film Exchange, D.C.D.Mass., 43 F.Supp. 996, 1006, affirmed, 1 Cir., 172 F.2d 37, certiorari denied 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1118; A.L.I. Restatement of Torts, vol. iv, sec. 899, comment c.

It appears from the leases themselves and from Judge Wyzanski's findings of fact that they were not cancellable by the lessees. Defendant, as a matter of grace, regularly allowed them to be terminated, but only on terms which imposed some obligations on the lessees. Plaintiff's claim of damages with respect to each lease on which it may be entitled to recover will require a consideration of the difference, if any, between the payments called for by the lease and the payment or payments which would have been reasonable under competitive conditions at the time the lease was made. This consideration will require complicated calculations with respect to each type of machine and each date of leas-

---

3. See also opinion of the District Court in that case, D.C., 15 F.R.D. 354.

**112**

ing. If similar calculations had to be made for every date on which a payment under every lease fell due or was made, the detail would be overwhelming. The general rule is the common sense rule in this case.

Plaintiff's alleged injury occurred when the leases were executed, at which time plaintiff assumed obligations which might be commuted or otherwise reduced, but could not be eliminated.

The motion for partial summary judgment will be granted. Counsel will prepare a proper order.