John A. GAETZI, d/b/a John A. Gaetzi Distributing Company, Plaintiff,

v.

CARLING BREWING COMPANY, Defendant.

Civ. A. No. 21820.

United States District Court
E. D. Michigan, S. D.
May 25, 1962.

616

James G. Fleming and L. Russell Heuman, Jackson, Mich., for plaintiff.

Hahn, Loeser, Keough, Freedheim & Dean, John Ladd Dean and Albert I. Borowitz, Cleveland, Ohio, Fischer, Sprague, Franklin & Ford, David G. Barnett, Detroit, Mich., for defendant.

McCREE, District Judge.

Plaintiff, a former distributor of Carling beer and ale, commenced the present action on October 30, 1961, seeking damages for defendant's wrongful termination of his Carling distributorship. Count 1 of the complaint asserts a treble damage claim under Section 4 of the Clayton Act, 15 U.S.C. § 15, 15 U.S.C.A. § 15. In Count 2, it is claimed that the termination is actionable on various common law grounds.

Defendant filed a motion for summary judgment on Count 1, on the ground that the cause of action set forth therein is barred by the four-year statute of limitations applicable to private antitrust actions, 15 U.S.C. § 15b, 15 U.S.C.A. § 15b.

In the course of argument on the motion, plaintiff suggested that the period of limitations was suspended by reason of fraudulent concealment on the part of defendant. In view of this development, the court entertained and granted a motion for leave to amend the complaint for the purpose of alleging facts relative to concealment of the cause of action. Plaintiff subsequently filed an amended complaint, and defendant renewed its motion for partial summary judgment.

The allegations contained in the antitrust count may be summarized as follows. In February, 1952, plaintiff, who was then a successful independent distributor of various brands of beer and ale in Jackson County, Michigan, agreed to undertake the distribution of defendant's products, which at that time were virtually unknown in that locality. In succeeding years, plaintiff's sales of defendant's products increased dramatically.

At various times after plaintiff had assumed the Carling franchise defendant indicated displeasure because plaintiff was not discontinuing the distribution of competing brands of beer, and in November, 1953, at defendant's insistence, plaintiff discontinued distribution of two such brands. Plaintiff also was prevailed upon to increase his price for brands other than defendant's. In addition, defendant induced plaintiff to divest himself of an outside interest in an unrelated business and to devote himself exclusively to distribution of beer. Plaintiff thus was reduced to a state of nearly total dependence upon defendant.

In 1953 and 1954, plaintiff heard of reports circulating in the trade that defendant was planning to terminate his distributorship. Although defendant assured plaintiff that these reports were false and complimented plaintiff on his past and present performance, defendant suddenly and without explanation terminated plaintiff's franchise in November, 1955.[1] In plaintiff's place, defendant substituted another distributor who has favored Carling products to the prejudice of those of defendant's competitors.

The complaint further alleges that the termination was the result of a conspiracy between defendant and others to eliminate competition from other brands of beer and to achieve for themselves a monopoly of the brewing industry in the United States.

The nature and origin of the alleged conspiracy is described in detail in the complaint. Defendant, Carling Brewing Company, a Virginia corporation, is a subsidiary owned and controlled by Canadian Breweries, Ltd., a Canadian corporation. It is alleged that the conspiracy originated in 1930 among officers and directors of Canadian Breweries (then known as Brewing Corporation of Ontario, Ltd.) and a group of investors from the United Kingdom, known as the "London Committee".

Between 1930 and 1959, the parent corporation acquired numerous brewing company subsidiaries in the United States and Canada. Canadian Breweries, defendant Carling Brewing Company, and other subsidiaries, initially by

1. Paragraph 25 of the complaint alleges that the date of termination was April, 1954. However, plaintiff's counsel acknowledged this to be an error and stipulated that the correct date was November, 1955. (See Deposition of Plaintiff, p. 8).

oral agreement, engaged independent distributors in key territories throughout the United States to introduce defendant's products to the consuming public. These distributors were encouraged to expand their personnel and capital investment to the end of increasing sales of defendant's products. After the distributors had succeeded in building a profitable business in defendant's products, they were required to sign a distributorship contract prepared by defendant. This contract affords either party the right to terminate at will and without prior notice. The right to terminate is without value to the distributor and in practical effect places him at defendant's mercy. However, distributors were told by defendant that the termination clause was intended for new and untried distributors and would not be invoked against established and successful ones.

After distributors had built the sale of defendant's products to substantial volumes, defendant and its co-conspirators began to dictate price schedules for competing brands and to demand that certain brands be discontinued. In the meantime, new distributorships, composed of persons allied with the conspirators, were secretly set up. Thereafter the original distributorships were substantially reduced or entirely terminated, and the territory was reassigned to the new distributors. This, in substance, is the scheme by which plaintiff claims that he and many other independent distributors have been victimized, and for which he seeks relief.

### Date on Which Cause of Action Accrued

■ Federal law must be applied to determine when a private antitrust claim accrues. Emich Motors Corp. v. General Motors Corp., 229 F.2d 714, 59 A.L.R.2d 159 (7th Cir. 1956); Delta Theaters v. Paramount Pictures, 158 F. Supp. 644 (E.D.La.1958), appeal dismissed, 259 F.2d 563 (5th Cir. 1958). The cases uniformly hold that a cause of action for damages under the antitrust laws does not arise with the formation of an illegal conspiracy, but rather when "the plaintiff's interest is invaded to his damage". Suckow Borax Mines Consol. v. Borax Consolidated, 185 F.2d 196, 208 (9th Cir. 1950), cert. denied, 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680 (1951). Accord: Radio Corporation of America v. Rauland Corp., 186 F.Supp. 704 (E.D. Ill.1956); Muskin Shoe Co. v. United Shoe Machinery Corp., 167 F.Supp. 106 (D.Md.1958); Delta Theaters v. Paramount Pictures, supra.

In his deposition, plaintiff testified that he received written notice of the cancellation of his distributorship on November 7, 1955. He also testified that the last delivery of beer from defendant was made on November 2, 1955, and the last order placed by plaintiff with defendant, which was unfilled by reason of the cancellation of the distributorship, was placed in early November, 1955, prior to receipt of notice of termination of the distributorship.

■ Accordingly it appears, and I so find, that plaintiff first sustained the damage alleged on November 7, 1955. It follows that the cause of action asserted in Count 1 of the amended complaint accrued on that date.

### Applicability of Federal Four-Year Statute of Limitations

15 U.S.C. § 15b, 15 U.S.C.A. § 15b provides as follows:

"Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this section and sections 15a and 16 of this title shall be revived by said sections."

This federal statute of limitations for private antitrust suits was enacted on July 7, 1955, to take effect six months thereafter, viz., on January 7, 1956.

It will be seen that the present cause of action, which accrued on November 7, 1955, arose in the interval between the enactment and the effective date of the federal limitations statute.

Plaintiff contends that the Michigan six-year statute of limitations[2] governs this action. Defendant urges that the four-year federal statute controls.

Defendant's position finds ample support in the cases. See United Shoe Machinery Corp. v. International Shoe Machine Corp., 275 F.2d 459 (1st Cir. 1960); Herman Schwabe, Inc. v. United Shoe Machinery Corp., 274 F.2d 608 (2d Cir. 1960); United Banana Co. v. United Fruit Co., 172 F.Supp. 580 (D.Conn. 1959); April v. National Cranberry Ass'n, 168 F.Supp. 919 (D.Mass.1958); Muskin Shoe Co. v. United Shoe Machinery Corp., 167 F.Supp. 106 (D.Md. 1958); Solinski v. General Electric Co., 149 F.Supp. 784 (D.N.J.1957).

It is true that the above-cited cases involved causes of action antedating the enactment of the federal statute, whereas the instant action accrued after the enactment date. This factual difference is without significance and presents, if anything, a stronger case for applying the federal prescriptive period.

The Congressional purpose in postponing the operation of the new limitations statute was stated in April v. National Cranberry Ass'n, supra, 168 F.Supp. at 924:

"Section 15b and the amendments to section 16 were enacted so as not to take effect for six months, in order to allow persons having rights more than four years old at the date of passage, but still not barred under their local statute, a period of grace in which to commence suit."

If the federal statute had taken effect immediately upon passage, persons with viable claims under longer state limitations statutes may have found themselves barred from bringing suit. To avoid unfairness and to safeguard the rights of such persons, Congress provided the six-months grace period within which to commence suit on old claims. See House Report No. 422 (H.R. 4954), 84th Congress, 1st Session (Apr. 18, 1955). Obviously plaintiff here was not in that position and could not have been aggrieved had the new federal statute taken effect immediately.

■ Thus, Count 1 of the amended complaint is governed by the four-year limitations period provided in 15 U.S.C. § 15b, 15 U.S.C.A. § 15b.

### Circumstances Under Which Statute of Limitations is Tolled

Plaintiff contends that even if the applicable limitations period is four years, his suit is timely since it was commenced promptly upon discovery of the alleged illegal conspiracy. He advances two arguments. First, plaintiff suggests that in private antitrust cases the statute of limitations is suspended until the injured person learns of the existence of the illegal conspiracy, irrespective of concealment by defendant. Alternatively, plaintiff argues that if it be necessary to show affirmative acts of concealment on the part of defendant, the additional matter set forth in the amended complaint and in the affidavit in opposition to defendant's motion for summary judgment sufficiently indicates that defendant did in fact commit such affirmative fraudulent acts.

■ We are dealing here with a federally-created right conjoined with a federal statute of limitations. In such a case the extension of limitations is governed by "federal equitable doctrine". Bailey v. Glover, 21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636 (1874).[3] The contours

---

2. Mich.Comp.Laws § 609.13 (1948), Mich. Stats.Ann. § 27.605. See Schreiber v. Loew's Inc., 147 F.Supp. 319 (W.D.Mich. 1957).

3. Indeed, this equitable doctrine pertains even where state statutes of limitations are applicable to federally-created rights, either in equity, Holmberg v. Armbrecht,

of this doctrine in relation to private antitrust actions unfortunately are by no means as precise as either of the parties insists.

■ It does appear to be settled that where the gravamen of an action is fraud and "the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." Bailey v. Glover, supra, 88 U.S. at 348.

■ Similarly, there is no necessity for special circumstances when the defendant is under a fiduciary duty to make a disclosure to the plaintiff. Mere silence in such instances, without affirmative action of any sort, will suffice to toll the statute. Oliver v. Piatt, 3 How. 333, 411, 44 U.S. 333, 411, 11 L.Ed. 622 (1845).

The cause of action asserted in the present case, however, is predicated neither on fraud nor on breach of fiduciary duty, but on violation of the antitrust laws. The first question to be considered then is whether plaintiff is correct in his assertion that in an antitrust action ignorance of the facts constituting the cause of action suspends the prescriptive period, absent affirmative acts of concealment by defendant.

Plaintiff cites as authority for this proposition American Tobacco Co. v. Peoples Tobacco Co., 204 F. 58 (5th Cir. 1913), Crummer Co. v. Du Pont, 255 F. 2d 425 (5th Cir. 1958), cert. denied, 358 U.S. 884, 79 S.Ct. 119, 3 L.Ed.2d 113 (1958), and Winkler-Koch Engineering Co. v. Universal Oil Prod. Co., 100 F. Supp. 15 (S.D.N.Y.1951). In each of these cases, however, the plaintiff's delay in bringing suit was excused because the conduct of the defendant which formed the basis for suit, just as in the fraud cases, necessarily had the effect of thwarting or long delaying discovery that an actionable wrong had occurred. It was not the mere existence of an illegal conspiracy which tolled the statute, but rather the presence of special circumstances which inevitably caused the plaintiff to remain in ignorance that a wrong had been committed.

Thus in American Tobacco, the fact that the defendant company maintained any relationship at all with a competitor of the plaintiff was purposely and deliberately hidden. Although the object of this concealment was to circumvent a boycott by organized labor rather than to mislead the plaintiff company, the court looked to the effect of the concealment and accordingly permitted belated suit.

In the Crummer case, the defendant had advanced the illegal scheme by fraudulent recourse to public authorities whose investigations were by law largely kept secret. This "necessarily resulted in the degree of concealment which, if successful, would toll the running of the statute." 255 F.2d at 432.

And in Winkler-Koch, the statute of limitations commenced to run only when the plaintiff first learned of facts which led to the belief that the defendant had obtained a ruinous patent infringement judgment by bribery and corruption of a judge.

In summary, then, each of the cases upon which plaintiff relies involved something more than mere silence on the part of the defendant. The illegal conspiracies proceeded in a manner which precluded detention. The activities of the defendants can be characterized as "self-concealing". The fact that the defendants did not take further steps to impede discovery after the plaintiff had sustained injury is unimportant, for the conduct which is denominated "concealment" may take place before the cause of action accrues as well as afterwards.

327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), or at law, Moviecolor Ltd. v. Eastman Kodak Co., 288 F.2d 80 (2d Cir. 1961), cert. denied, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961).

Defendant has cited a number of cases for the proposition that an affirmative act of concealment is required in order to toll the statute of limitations. Several of the cases which so hold involve application of state law relative to tolling, rather than federal equitable doctrine. See, e. g., Burnham Chemical Co. v. Borax Consolidated, 170 F.2d 569 (9th Cir. 1948), cert. denied, 336 U.S. 924, 69 S.Ct. 655, 93 L.Ed. 1086 (1949) (California law); Foster & Kleiser Co. v. Special Site Sign Co., 85 F.2d 742 (9th Cir. 1936) (California law); Klein v. Lionel Corp., 130 F.Supp. 725 (D.Del. 1955) (Delaware law). In other cases the circumstances needed to toll the statute are not clearly stated because the plaintiffs were found to have had actual knowledge of the conspiracy long before filing suit. E. g. Moviecolor Ltd. v. Eastman Kodak Co., 288 F.2d 80 (2d Cir. 1961), cert. denied, 368 U.S. 821, 82 S. Ct. 39, 7 L.Ed.2d 26 (1961); Suckow Borax Mines Consolidated v. Borax Consolidated, 185 F.2d 196 (9th Cir. 1950), cert. denied, 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680 (1951); Delta Theaters v. Paramount Pictures, 158 F.Supp. 644 (E. D.La.1958), appeal dismissed, 259 F.2d 563 (5th Cir. 1958).

However, it has been stated in a case in which a finding of actual knowledge was made that in order to toll the statute plaintiff must show (1) that he lacked knowledge of his cause of action, (2) that defendant committed an affirmative act of concealment, and (3) that diligence on plaintiff's part would not have uncovered the cause of action. Philco Corp. v. Radio Corporation of America, 186 F. Supp. 155, 163–164 (E.D.Pa.1960). And compare Strout v. United Shoe Machinery Co., 208 F. 646, 652 (D.Mass. 1913), aff'd, 225 F. 1022 (1st Cir. 1915):

"His cause of action is unlawful restraint only. There is nothing,

therefore, which relieves him from specifying as ordinarily required, if he undertakes to assert fraudulent concealment of the cause of action in order to escape the statute of limitations * * *."

Although the cases cited by plaintiff have sometimes been regarded as supporting the argument that no affirmative act of concealment is required to toll the statute in restraint of trade conspiracy cases,[4] on analysis they all involve self-concealing misconduct and are not incompatible with the rationale underlying the principle that affirmative acts of concealment must be shown except in cases founded on fraud or breach of fiduciary duty.

Accordingly we next must determine whether the record indicates that a genuine question of fact exists with respect to concealment. If so, defendant's motion for summary judgment must be denied; if not, it must be granted. Rule 56(c), F.R.Civ.P., 28 U.S.C.A.

### Facts Pertaining to Alleged Concealment

Disregarding mere conclusionary allegations of fraudulent concealment, the facts set forth in the amended complaint and in plaintiff's affidavit in opposition to the motion for summary judgment are these:

1) Shortly before plaintiff's franchise was terminated, defendant sent a representative into plaintiff's territory ostensibly to conduct a market survey, but actually to familiarize himself with plaintiff's customers and with plaintiff's business operations preparatory to the intended termination. This representative dispelled plaintiff's suspicions by assurances that plaintiff was doing a good job and that his distributorship was not in jeopardy.

---

4. See Moviecolor Ltd. v. Eastman Kodak Co., supra note 3, 288 F.2d at p. 87: "Even if no affirmative act of concealment is required in restraint of trade conspiracy cases, see Dawson [Fraudulent Concealment and Statutes of Limitation, 31 Mich.L.Rev. 875] at 880, 907–08; American Tobacco Co. v. People's Tobacco Co., supra; cf. 63 Harv.L.Rev. at 1221, in contrast to the usual rule where there is no fiduciary relationship, *a point we do not decide * * *.*" (Emphasis added).

2) Subsequently, on or about November 2nd or 3rd, 1955, four representatives of defendant visited plaintiff and curtly informed him that they were "closing him out". Plaintiff's questions as to the reason for such drastic action were evaded, although these representatives by virtue of their position with defendant must have known of the illegal conspiracy.

3) Following the termination, plaintiff continued to inquire of various representatives of defendant as to the reason for the termination, but he was never informed of any facts which would have put him on notice of the conspiracy.

4) In the spring of 1956, plaintiff mentioned to a Carling representative that he was contemplating bringing a suit against defendant for repayment of some advertising monies. The representative advised plaintiff that no such action would lie under the franchise agreement, and plaintiff abandoned the idea.

5) Plaintiff never was told that other distributorships had been terminated under similar circumstances. He first learned of this fact and of the existence of the conspiracy when in April, 1961, he was called to give a deposition in a private antitrust action brought in the Western District of Pennsylvania by another former Carling distributor.

6) Thereafter plaintiff commenced an investigation and filed the instant suit with reasonable promptness.

The foregoing facts are not controverted, and plaintiff contends that they establish affirmative acts of concealment by defendant.

In addition, plaintiff states that defendant's course of conduct has by its very nature prevented plaintiff's discovery of his cause of action, in that defendant chose a "self-concealing scheme" of operating through a Canadian corporation (Canadian Breweries Ltd.) with the result that its operations were concealed from scrutiny and publicity.

The acts charged may be separated into four categories, which we shall consider sequentially.

1. *Failure to give advance warning of cancellation of plaintiff's distributorship.* The distributorship agreement between plaintiff and defendant specifically authorized termination without prior notification. It is difficult to understand how the abrupt and unexplained cancellation of plaintiff's franchise in November, 1955 after defendant's previous assurances of satisfaction would constitute concealment. Indeed, the very manner in which the termination occurred could hardly have discouraged investigation or caused plaintiff to slumber on his rights, but more likely would have produced the opposite effect. Moreover, the fact that defendant's false assurances allayed plaintiff's suspicions before the termination actually occurred has no bearing inasmuch as the statute of limitations did not begin to run until the date of termination, at which time the assurances ceased to have any tranquilizing effect.

2. *Failure to respond to plaintiff's inquiries.* Plaintiff states that his repeated efforts to obtain from defendant an explanation as to the reason for his loss of the Carling distributorship were unsuccessful. He does not claim that defendant, by a false but plausible explanation, dissuaded him from seeking out the facts. All that defendant did was to remain silent. Clearly the silence of defendant could not have been calculated to deter plaintiff from other inquiry, but could only have compounded plaintiff's suspicions. With reason to suspect that the loss of his business was the result of illegal conduct by defendant, plaintiff was obliged to do more by way of investigation than simply to make fruitless inquiries of the suspected wrongdoer. We have previously indicated that concealment necessitates the commission of affirmative acts. Mere silence, where there is no duty to speak, does not toll the statute.

3. *Representation that plaintiff had no cause of action.* Plaintiff asserts that a representative of defendant made an affirmative misrepresentation when he advised plaintiff after the termination of plaintiff's distributorship, that the fran-

chise agreement precluded recovery for damages growing out of the termination. Assuming without deciding the incorrectness of this representation, it does not follow that plaintiff was entitled to rely thereon to his prejudice. "Being, at most, a misrepresentation of law, it avails the plaintiff nothing, and is clearly insufficient, even if relied upon by the plaintiff to his detriment, to toll the running of the statute of limitations on his claim." Shunney v. Fuller Co., 111 F. Supp. 543, 545 (D.R.I.1953).

█ 4. *Self-concealment of the alleged consiracy.* "Self-concealment" of a conspiracy sufficient to toll the statute of limitations refers to activities in furtherance of the conspiracy which by their nature defy detection. Plaintiff asserts that defendant concealed its unlawful activities by operating through its parent corporation. However, unlike the American Tobacco case, supra, the relationship existing between the two companies was well known or readily ascertainable. As the uncontroverted affidavit of the executive vice-president of Canadian Breweries Ltd. indicates, the parent-subsidiary relationship between Canadian Breweries and defendant has been a matter of record in Canadian's annual report to shareholders since 1945. Furthermore, there is quoted in defendant's brief an excerpt from plaintiff's deposition in the United States District Court suit in Pennsylvania, in which plaintiff admitted that he had been informed in 1952 that the controlling interest in defendant had been purchased by someone in Canada.

In plaintiff's original complaint, which gives a detailed history of the alleged conspiracy, plaintiff makes reference to an investigation conducted by an agency of the Canadian government into the acquisition of rival brewing companies by Canadian Breweries. Plaintiff states as follows:

"The investigation was made by said Commission and its report was submitted to the Minister of Justice on May 16, 1955. The report has been printed and is available at the Queen's Printer and Controller of Stationery, Ottawa, Canada, under the title of 'Restrictive Trade Practices Commission—Report—Concerning an Alleged Combine in the Manufacture, Distribution and Sale of Beer in Canada—Department of Justice Ottawa.'"

The report condemned the acquisition by Canadian Breweries as a monopolistic activity. Since this official document was printed and available to the public according to plaintiff's own allegation, even before plaintiff's distributorship had been terminated, it would appear that the alleged conspiracy was no longer concealed and could have been discovered by due diligence well within the statutory period for bringing suit.

█ I, therefore, conclude that no genuine question of fact exists with respect to circumstances which would toll the four-year statute of limitations. The claim asserted in Count 1 of plaintiff's amended complaint accrued on November 7, 1955, and became barred on November 7, 1959. Since suit was not commenced until October 30, 1961, defendant's motion for summary judgment as to Count 1 must be granted, and an appropriate order may be submitted.