GLAZER STEEL CORPORATION,
Plaintiff,

v.

TOYOMENKA, INC., and Nippon Steel
Corporation, Defendants.

No. 70 Civ. 4367.

United States District Court,
S. D. New York.

April 5, 1974.

Donovan, Leisure, Newton & Irvine, New York City, and Covington & Burling, Washington, D. C., for plaintiff.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant Nippon Steel.

Valicenti, Leighton, Reid & Pine, New York City, for defendant Toyomenka.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge.

■ This case was filed in 1970 as a suit for breach of contract and fraudulent misrepresentation. The plaintiff is a Tennessee corporation engaged in the metal warehousing business; the defendant Toyomenka is a New York trading company and the defendant Nippon Steel Corporation is a Japanese manufacturer of steel products. The complaint alleges that in October 1967, in consideration for the plaintiff's promise to buy 18,000 metric tons of steel from them, the defendants promised to continue offering steel to the plaintiff in the quantities required by the plaintiff at the defendants' prevailing prices. It further alleges that in 1968 and subsequently the defendants breached the agreement by refusing to sell steel to the plaintiff in the quantities agreed to at the prevailing prices. In July 1972, the complaint was amended to add a cause of action based on Section 1 of the Sherman Act (15 U.S.C. § 1), namely that the defendant Nippon imposed a restriction on the resale of its steel products by selectively refusing to deal with trading companies in order to prevent them from dealing with the plaintiff. In July 1973, the plaintiff again amended the complaint to add a fourth count alleging that from as early as 1963 the defendants had conspired with unspecified trading companies to allocate customers for steel products manufactured by Nippon and that the plaintiff had been assigned to Toyomenka as its only regular source of such products, in violation of Section 1 of the Sherman Act. The defendants now move to dismiss the fourth count as barred by the four year statute of limitations applicable to private antitrust actions (15 U.S.C. § 15b). Their motion is made alternatively pursuant to Rule 12(b)(6) or Rule 56, Fed. R.Civ.P.

The defendants argue that the cause of action pleaded in Count IV must have accrued no later than 1968 and that therefore the statute of limitations expired in 1972 unless it was tolled by fraudulent concealment. They claim that the complaint does not plead fraudulent concealment with sufficient specificity to raise an issue and that plaintiff has made no factual showing that there was any fraudulent concealment. Further, they urge that Count IV does not relate back to any of the other counts in the complaint.

The first question to be resolved is when the cause of action alleged in Count IV accrued. The general rule governing accrual of private antitrust actions has been laid down by the Supreme Court as follows:

"Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business . . . In the context of a continuing conspiracy to

violate the antitrust laws, . . . this has usually been understood to mean that each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act." Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L. Ed.2d 77 (1971) (citations omitted).

Count IV alleges a continuing conspiracy to allocate customers, which the defendants insist could not possibly have caused the plaintiff any injury after 1968. The defendant argues that the record is clear that no steel manufactured by Nippon was sold to the plaintiff after 1968. I find that the record is not sufficiently clear on this issue to warrant the granting of a motion for summary judgment. The items on which defendants rely are paragraph 15 of defendant Nippon Steel's Answer to plaintiff's First Amended Complaint and plaintiff's Answer to Interrogatory No. 6 of Defendants' Interrogatories, Second Set. In paragraph 15 defendant Nippon "admits that, beginning in or about September 1968, it unilaterally decided to discontinue making offers of steel products of its manufacture in response to inquiries made on behalf of plaintiff because of prior unsatisfactory business dealings involving plaintiff." Defendants nowhere in their pleadings state categorically that they did not in fact sell any Nippon steel to plaintiff after 1968. Plaintiff's Answer to Interrogatory No. 6 reads in relevant part as follows:

"(a)–(c) Plaintiff first learned that defendants had discontinued making substantial quantities of the steel products in suit available to it when it received two letters to that effect, dated September 30, 1968, written by K. Saeki, manager of Toyomenka's Houston office."

As plaintiff correctly argues, even if the defendants had discontinued making *substantial* quantities of Nippon steel available, they may have sold some Nippon steel to the plaintiff after 1968.

Furthermore, even if the plaintiff bought no Nippon manufactured steel after 1968, a continuing cause of action may still have accrued thereafter based on the conspiracy to allocate customers. Count IV alleges that, in addition to paying higher prices for the steel purchased from Toyomenka than it would have had to pay had Toyomenka been in competition with other trading companies for plaintiff's purchases of Nippon manufactured steel, plaintiff was also injured in its business "by being restricted from purchasing quantities of Nippon manufactured steel from trading companies other than Toyomenka, thus forcing plaintiff to purchase such products from higher priced sources or to forego such purchases altogether." (Complaint, paragraph 28(a)). This separate allegation of injury is directed at a period when the plaintiff could not purchase steel from Toyomenka, possibly the period after 1968. Thus Count IV would not be barred by the statute of limitations even if it were shown unequivocally that the plaintiff was unable to buy any Nippon manufactured steel after 1968.

It is important to recognize that Count IV states a different legal theory for the post-1968 cause of action than does Count III. Count III alleges that Nippon, the manufacturer, pressured the trading companies into cutting off the plaintiff by refusing to sell them any steel for resale to the plaintiff. Count IV alleges that Nippon and Toyomenka agreed with the other trading companies to allocate customers. Under the theory of Count IV, plaintiff's inability to purchase steel from trading companies other than Toyomenka was the result of agreements between the trading companies and with Nippon rather than of coercion by Nippon. At this point in the discovery process, which is far from complete, it is unclear which theory, if any, the plaintiff will be able to prove. It is clear, however, that a cause of action based on Count IV, separate and distinct from any cause of action based on Count III, may have accrued after 1968.

It is therefore not necessary for this Court to reach the questions of fraudulent concealment or relation back of the amendment. However, as an alternative ground of decision I find that the plaintiff has raised a genuine issue of fact with regard to fraudulent concealment, which requires a denial of the motion to dismiss. In order to toll the statute on the ground of fraudulent concealment the plaintiff must show (1) that he lacked knowledge of his cause of action; (2) that the defendant committed an affirmative act of concealment; and (3) that diligence on the plaintiff's part would not have uncovered the cause of action. Gaetzi v. Carling Brewing Company, 205 F.Supp. 615 (E.D.Mich. 1962); see Saunders v. National Basketball Association, 348 F.Supp. 649 (N.D. Ill.1972); Picoult v. Ralston Purina Co., CCH Trade Reg.Rep. 1969 Trade Cas. ¶ 72,681 (S.D.N.Y. Jan. 20, 1969). The history of discovery in this case contains evidence of each of these elements.

Starting in November 1970, plaintiff submitted interrogatories designed to uncover the facts alleged in Count IV, but the defendants continually resisted answering them on the ground that the interrogatories were irrelevant to the other counts in the complaint. In each instance the answers to these interrogatories were given only after the plaintiff moved to compel answers, and owing largely to delays in deciding these and other motions, the final answer containing the grounds necessary to support Count IV under Rule 11, Fed.R.Civ.P., was not supplied until April 13, 1973. Under these circumstances it seems unlikely that greater diligence on the part of the plaintiff would have uncovered the cause of action any sooner.

Defendants argue that the plaintiff has long known about the cause of action. They point to a statement by plaintiff's president, Jerome S. Glazer, at his deposition on January 28, 1971, to the effect that: "It seemed as though when [Glazer's purchasing] inquiries went out to the [Japanese] trading companies, of which they all received a copy, no one seemed to come back except Toyomenka with a price." However, although this should have, and did, arouse plaintiff's suspicions with regard to possible antitrust violations, it is not enough to constitute good ground as required by Rule 11, Fed.R.Civ.P. Freeman v. Kirby, 27 F.R.D. 395 (S.D.N.Y. 1961). On the record before me, I find that plaintiff has made a sufficient showing that he did not know in advance of the cause of action alleged in Count IV to render summary judgment inappropriate at this time.

The question whether either defendant committed an affirmative act of concealment is a more difficult one, but the answer is sufficiently in doubt to withstand a motion for summary judgment. Defendants' resistance to discovery made it impossible for the plaintiff to obtain information regarding its cause of action. It is true that "[m]ere silence, where there is no duty to speak, does not toll the statute." Gaetzi v. Carling Brewing Company, *supra,* 205 F.Supp. at 622. However, the history of discovery in this case contains several instances in which judges and magistrates held that the defendants *were* under a "duty to speak". In these circumstances their failure to do so may well have constituted an act of concealment.

It is true that the allegations of fraudulent concealment might have been pleaded with greater specificity. However, in view of the plaintiff's showing on this motion that the history of discovery in this case might have amounted to fraudulent concealment, no purpose would be served by requiring the plaintiff to replead.

The denial of the motion to dismiss will not thwart the purpose of the statute of limitations. That statute was intended to protect defendants from having to defend against stale causes of action of which they were unaware. The history of this action makes it clear that the defendants have been aware for some time that the plaintiff was attempting to gather sufficient facts on which

**504**

to base the assertion of the claims alleged in Count IV. The motion to dismiss must therefore be denied.

So ordered.