**UNITED STATES of America,**
Plaintiff,

v.

**Diaz D. McELVEEN et al., Defendants.**

No. 9146.

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 7, 1959.

W. Wilson White, Asst. Atty. Gen., M. Hepburn Many, U. S. Atty., New Orleans, La., for plaintiff.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., John E. Jackson, Special Counsel to Atty. Gen., William P. Schuler, Sp. Asst. Atty. Gen., Weldon A. Cousins, Sp. Asst. Atty. Gen., Henry J. Roberts, Jr., Sp. Asst. Atty. Gen., France W. Watts, Jr., Franklinton, La., for defendant Curtis M. Thomas, Registrar of Voters of Washington Parish.

Ben C. Toledano, New Orleans, La., W. M. Shaw, Homer, La., for Citizens' Council of Washington Parish and individual defendants.

J. SKELLY WRIGHT, District Judge.

In the spring of 1959 the Citizens' Council, professing a purpose to purge

the registration rolls of Washington Parish, Louisiana, of all persons illegally registered, succeeded in disenfranchising 85% of the Negro voters of the Parish and 0.07% of the white. The United States in this action charges that this profession of high purpose was a fraud designed to deny Negro citizens of a right to vote. Made defendants and charged with conspiring with the Citizens' Council are several members of the Council and the Registrar of Voters for Washington Parish.

The defendants have moved to dismiss, alleging the unconstitutionality of certain sections [1] of the Civil Rights Act of 1957 under which the United States is proceeding. They admit that under the Fifteenth Amendment, Congress may authorize the United States to seek injunctive relief to protect citizens against state action denying their right to vote because of race. They contend, however, that Section 1971(c) is unconstitutional in that it may be interpreted as authorizing such action against private individuals as well as persons acting under color of law.

The complaint here specifically charges that the defendants, acting under color of state law, have deprived certain named citizens of their right to vote because of their race. The motion to dismiss, of course, admits the truth of these allegations. There is, therefore, no contention that legislation covering the facts of this case would be invalid. The position of defendants simply is that because Section 1971(c) may be more broadly interpreted, it is unconstitutional.[2]

The defendants' contention is so obviously without merit that this Court would merely deny the motion to dismiss without more were it not for the fact that a district court has upheld a similar contention and declared Section 1971(c) unconstitutional.[3] In so doing, that Court ignored the most elementary principles of statutory construction, as repeatedly announced by the Supreme Court, and relied on an old case [4] interpreting a criminal statute.

 It is true that the various civil rights acts have been the subject of much confused litigation. Out of this confusion, however, have emerged two propositions, both of which have now won general acceptance. The first of these is that the Congress may, without reference to the Fifteenth Amendment, pass any legislation reasonably designed to protect citizens in the exercise of any right guaranteed by the Constitution.[5]

---

1. 42 U.S.C.A. § 1971(a) and (c). These provisions read as follows:

 "(a) All citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous condition of servitude; any constitution, law, custom, usage, or regulation of any State or Territory, or by or under its authority, to the contrary notwithstanding. * * *

 "(c) Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice which would deprive any other person of any right or privilege secured by subsection (a) or (b) of this section, the Attorney General may institute for the United States, or in the name of the United States, a civil action or other proper proceeding for pre-

ventive relief, including an application for a permanent or temporary injunction, restraining order, or other order. In any proceeding hereunder the United States shall be liable for costs the same as a private person."

2. The defendant Registrar of Voters makes the additional contention that the function he performed in disenfranchising the voters was purely ministerial and was required by state statutes. The complaint, however, specifically charges that he knowingly participated in the discrimination. Moreover, the Registrar is an indispensable party to the granting of the relief. See Williams v. Fanning, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95.

3. United States v. Raines, D.C.M.D.Ga., 172 F.Supp. 552.

4. United States v. Reese, 92 U.S. 214, 23 L.Ed. 563.

5. United States v. Williams, 341 U.S. 70, 71 S.Ct. 581, 95 L.Ed. 758; United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031,

The right to participate in the election of federal officers is so guaranteed.[6] Article I, Section 4, of the Constitution specifically authorizes Congress to regulate the manner of holding elections for federal office. Article I, Section 8, Clause 18, states that Congress is given authority "to make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers." Under this authority, presumably Congress may also control the registration, but not the qualification,[7] of voters in federal elections, since such authority would certainly be reasonably necessary to insure their proper conduct.

██ The second proposition relates to the power of Congress to control all elections for state or federal office. With reference to such elections, the Fifteenth Amendment imposes on Congress the duty to protect citizens from being denied their right to vote "by the United States or by any State on account of race, color, or previous condition of servitude." To be appropriate under the Fifteenth Amendment, legislation must be directed against persons acting under color of law, state or federal, and it must relate to the denial, by such persons, of citizens' right to vote because of race. Any congressional action which does not contain these two elements cannot be supported by the Fifteenth Amendment.[8]

It is admitted by the United States that the sections of the Act in suit, since they specifically apply to all elections, are predicated on the Fifteenth Amendment. The United States contends that these sections must be read together, and when so read, apply only to persons acting under color of law. The United States also maintains that, conceding these sections may be construed more broadly so as to cover hypothetical cases involving actions against private individuals, since the defendants in suit are within the legitimate reach of the legislation, the extended interpretation thereof with reference to persons not before the Court is unnecessary. Certainly, the Government contends, no court should reach out for these imaginary persons, and, in effect, bring them into this litigation in order to declare the Act unconstitutional.

██ It is true that Sections 1971 (a) and (c), in outlining their area of operation, do not use the talismanic phrase "under color of law." By reading Sections 1971(a), (b), and (c), however, the legislative purpose and intent become obvious. Section 1971(a) applies to all elections and to all persons acting under color of law. The last clause in the section makes this clear.[9] Section 1971(b) relates only to federal elections and is not limited to persons acting under state law. Section 1971(c) authorizes the United States to seek injunctive relief where there has been a violation of either (a) or (b). Even if one had difficulty literally reading into Section 1971(a) the limitation to persons acting under color of law, any doubt respecting the intent of Congress can be resolved by reference to the prior jurisprudence outlining the permissible reach of the Fifteenth Amendment and restricting it specifically to persons acting under color of law.[10] No court is authorized to assume that Congress, in enacting this legislation, was ignorant of the uniform jurisprudence of the Supreme Court on

85 L.Ed. 1368; Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429; Ex Parte Yarbrough, 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274.

6. See Note 5.

7. The qualification of voters in federal elections is prescribed by Article I, Section 2 of the Constitution.

8. Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152; Smith v. Allwright,

321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987; James v. Bowman, 190 U.S. 127, 23 S.Ct. 678, 47 L.Ed. 979.

9. The last clause reads:
" * * * any constitution, law, custom, usage, or regulation of any State or Territory, or by or under its authority, to the contrary notwithstanding."

10. See Note 8.

the subject.[11] In fact, it is a cardinal rule of statutory construction that such jurisprudence may serve as a guide to interpretation.[12]

There are other elementary rules of statutory construction which may be consulted if one were in doubt as to the meaning of the Act. The first of these is that the constitutionality of an act will not be determined unless it is absolutely necessary to the decision of the case.[13] From this primary principle have evolved two rules of construction, both of which apply here: (1) the constitutionality of statutes will not be tested in the abstract without reference to the facts of the case at hand,[14] and (2) litigants may challenge the constitutionality of a statute only in so far as it affects them.[15]

Here we have defendants, all admittedly acting under color of state law, charged with denying citizens their right to vote because of their race. Un-

11. The legislative history of the Act shows that Congress was aware of this jurisprudence and sought to draft legislation to meet its constitutional requirements. See Notes 17, 18, 19, and 20.

12. Shapiro v. United States, 335 U.S. 1, 16, 68 S.Ct. 1375, 92 L.Ed. 1787; Hecht v. Malley, 265 U.S. 144, 153, 44 S.Ct. 462, 68 L.Ed. 949. See also State of Missouri v. Ross, 299 U.S. 72, 75, 57 S.Ct. 60, 81 L.Ed. 46; Sessions v. Ronadka, 145 U.S. 29, 42, 12 S.Ct. 799, 36 L.Ed. 609.

13. See United States v. International Union United Automobile, Aircraft and Agricultural Implement Workers of America, 352 U.S. 567, at page 590, 77 S.Ct. 529, at page 540, 1 L.Ed.2d 563:

"The impressive lesson of history confirms the wisdom of the repeated enunciation, the variously expressed admonition, of self-imposed inhibition against passing on the validity of an Act of Congress 'unless absolutely necessary to a decision of the case.' Burton v. United States, 196 U.S. 283, 295, 25 S.Ct. 243, 245, 49 L.Ed. 482."

See also cases collected in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, at page 345, 56 S.Ct. 466, at page 482, 80 L.Ed. 688.

14. See also Yazoo & Mississippi Valley R. Co. v. Jackson Vinegar Co., 226 U.S. 217, at page 219, 33 S.Ct. 40, at page 41, 57 L.Ed. 193:

"* * * Of course, the argument to sustain the contention is that, if the statute embraces cases such as are supposed, it is void as to them, and, if so void, is void *in toto*. But this court must deal with the case in hand, and not with imaginary ones. It suffices, therefore, to hold that, as applied to cases like the present, the statute is valid. * * *"

See Liverpool, New York & Philadelphia Steamship Co. v. Commissioners of Emigration, 113 U.S. 33, at page 39, 5 S. Ct. 352, at page 355, 28 L.Ed. 899:

"* * * It (the Court) has no jurisdiction to pronounce any statute, either of a state or of the United States, void, because irreconcilable with the constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies. * * *"

15. See Fleming v. Rhodes, 331 U.S. 100, at page 104, 67 S.Ct. 1140, at page 1142, 91 L.Ed. 1368:

"* * * Litigants may challenge the constitutionality of a statute only in so far as it affects them. * * *"

See also United States v. Wurzbach, 280 U.S. 396, at page 399, 50 S.Ct. 167, at page 169, 74 L.Ed. 508:

"It is argued at some length that the statute, if extended beyond the political purposes under the control of Congress, is too vague to be valid. The objection to uncertainty concerning the persons embraced need not trouble us now. There is no doubt that the words include representatives, and if there is any difficulty, which we are far from intimating, it will be time enough to consider it when raised by someone whom it concerns. * * *"

See also Heald v. District of Columbia, 259 U.S. 114, at page 123, 42 S.Ct. 434, at page 435, 66 L.Ed. 852:

"* * * It has been repeatedly held that one who would strike down a state statute as violative of the federal Constitution must show that he is within the class of persons with respect to whom the act is unconstitutional and that the alleged unconstitutional feature injures him. In no case has it been held that a different rule applies where the statute assailed is an act of Congress; nor has any good reason been suggested why it should be so held. * * *"

See also Rescue Army v. Municipal Court of City of Los Angeles, 331 U.S. 549, 67 S.Ct. 1409, 91 L.Ed. 1666; Virginian Ry. Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789; Jeffrey Manufacturing Co. v. Blagg, 235 U.S. 571, 35 S.Ct. 167, 59 L.Ed. 364.

questionably, to the extent it affects them, the Act is appropriate under the Fifteenth Amendment. There can be no question but that they are covered by its terms. In fact, they admit it. Their point is that the legislation may be interpreted as covering others not before the Court, individuals not acting under color of law. This Court has no right to consider these imaginary persons in the hypothetical situations conjured up by the defendants in determining whether or not the Act may be constitutionally applied to the facts of this case and to the defendants before this Court. The duty of this Court is to strain, if necessary, to save the Act, not to destroy it.[16]

The legislative history of this legislation shows that Congress was aware of the widespread attempt to disenfranchise the Negro, overtly through statutory enactments, and covertly through discriminatory administration of voting laws. Congress was also aware that disenfranchisement can be accomplished only with the cooperation of persons acting under color of state law since registration rolls are in the custody and under the control of state officers. Ref-

erence to the hearings,[17] the Committee reports[18] and the floor debate[19] on the legislation all demonstrate this awareness. This legislative history also shows beyond question that Congress was cognizant of its constitutional limitations and deliberately sought to enact legislation within those limits.[20] To say that Congress failed in this endeavor is to misread the language of the Act and to defile its great purpose.

In a democratic society there is no greater offense than illegally depriving a citizen of his right to vote. Such discrimination strikes at the very foundation of constitutional government. This offense is compounded when, as alleged here, it is committed under the guise of enforcing the law. The United States has made the solemn charge that these defendants have committed such an offense. Instead of challenging the constitutionality of the Civil Rights Act of 1957, these defendants should be searching their souls to see if this charge is well founded. This Court will make that determination after it hears all the evidence.

The motions to dismiss are denied.

16. See Screws v. United States, 325 U.S. 91, at page 100, 65 S.Ct. 1031, at page 1035, 89 L.Ed. 1495:
 " * * * Only if no construction can save the Act from this claim of unconstitutionality are we willing to reach that result. * * *"

17. Hearings before Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary, 85th Cong., 1st Session; Hearings before Subcommittee No. 5 of the House Committee on the Judiciary, 85th Cong., 1st Session. Hearings

before Committee on Rules, House of Representatives, 85th Cong., 1st Session, on H.R. 6127 at p. 44.

18. House Report No. 291, 85th Cong. 1st Session; Report to Accompany S.83, 85th Cong. 1st Session, Subcommittee Print.

19. 103 Cong.Rec. 12150, 12565, 12829, 13138, 13876, 13324, 13333, 13319, 13322, 12149, 13120, 13126, 8498, 9396, 12898, 12900, 13006, 13732, 13320.

20. In addition to Notes 17, 18, and 19, see 103 Cong.Rec. 13834, 13159.