310 F.2d 271
 KANSAS CITY, MISSOURI, a Municipal Corporation, Appellant,
v.
FEDERAL PACIFIC ELECTRIC COMPANY, Appellee.
KANSAS CITY, MISSOURI, a Municipal Corporation, Appellant,
v.
GENERAL ELECTRIC COMPANY, Appellee.
 No. 17117.
 No. 17118.
 United States Court of Appeals Eighth Circuit.
 November 6, 1962.
 Certiorari Denied November 19, 1962.
 
 See 83 S.Ct. 256.
 Rehearing Denied November 30, 1962.
 Keith Wilson, Jr., City Counselor, Kansas City, Mo., and William F. Mauer, Asst. City Counselor, Kansas City, Mo., for appellant.
 Dick H. Woods, Kansas City, Mo., Joseph J. Kelly, Jr., Howard F. Sachs and Alvin D. Shapiro, Kansas City, Mo., on brief, amici curiae, Kansas City Power & Light Co. et al.
 Charles B. Blackmar, Kansas City, Mo., for appellee General Electric Co.
 James C. Wilson, Kansas City, Mo., for appellee Federal Pacific Electric Co.
 Ralph M. Jones, John J. Kitchin, Donald H. Loudon, Kansas City, Mo., and Sheridan Morgan, Kansas City, Mo., and Jacob Imberman, New York City, on brief for appellees General Electric Co. and Federal Pacific Electric Co.
 John A. Woodbridge, St. Louis, Mo., Richmond C. Coburn, Thomas L. Croft, Alan C. Kohn, Peter W. Herzog, Jr., Ben Ely, Jr., of Coburn, Croft & Cook, St. Louis, Mo., on brief for Union Electric Co., amicus curiae.
 Before JOHNSEN, Chief Judge, and MATTHES and RIDGE, Circuit Judges.
 MATTHES, Circuit Judge.
 
 
 1
 On February 1, 1962, the City of Kansas City, Missouri, filed two suits in the United States District Court for the Western District of Missouri seeking to recover treble damages under § 4 of the Clayton Act for alleged violations of § 1 of the Sherman Act.[1] The amended complaint in each case was predicated upon an actionable combination and conspiracy, alleged to have been in existence since as early as 1948, and which resulted in damage to plaintiff only in 1954 when defendants allegedly overcharged plaintiff for certain electrical equipment. It was specifically alleged that defendants, through affirmative conduct, had fraudulently concealed the existence of the conspiracies from plaintiff and that plaintiff did not learn of the illegal combinations until after the United States had commenced criminal and civil proceedings against defendants in 1960.[2] Defendants do not challenge the sufficiency of the fraudulent concealment allegation.
 
 
 2
 The district court sustained defendants' motions to dismiss the complaints or, in the alternative, for summary judgment on the ground that the complaints as amended showed on their face that the claims, if any, upon which plaintiff's causes of action purported to be based, accrued more than four years prior to the date of the filing of the complaints, and more than four years prior to the date that any tolling provision contained in the Clayton Act became operative. These actions are before the court on appeal from the district court's judgments dismissing both cases.[3] The important and broad issue to be resolved is whether plaintiff's actions are barred by the provisions of § 4B of the Clayton Act (15 U.S.C.A. § 15b),[4] which reads as follows:
 
 
 3
 "Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this section and sections 15a and 16 of this title shall be revived by said sections."
 
 
 4
 Resolution of this question, as all parties agree, calls for an interpretation of the foregoing statute.[5]
 
 
 5
 We are mindful of the fundamental principle that a court should not engage in interpreting or construing a statute that is clear and unambiguous on its face. Only those statutes which are ambiguous or of doubtful meaning are subject to the process of statutory interpretation. Packard Motor Car Co. v. National Labor Relations Board (1947), 330 U.S. 485, 492, 67 S.Ct. 789, 91 L.Ed. 1040, and Sutherland, Statutory Construction, Vol. 2, § 4502 (3d Ed. 1943). Here the controversy centers upon the meaning of the phrase "within four years after the cause of action accrued." More precisely, did Congress intend that the federal doctrine of fraudulent concealment should be read into § 4B so that the limitation period of four years would be suspended and tolled until the injured party, by the exercise of reasonable diligence, discovers that his rights have been invaded?
 
 
 6
 Before delving further into this question, however, and as explanatory matter, we observe that during the period between 1914, when the Clayton Act became the law, and 1955 when § 4B was enacted, state statutes of limitation were resorted to in actions brought under the Clayton Act.[6] The disparity in the state statutes (varying between one and twenty years) promoted "forum-shopping" and finally resulted in an awareness of the need for a federal limitation period that would provide uniformity throughout the United States. Congress provided the remedy by enacting § 4B on July 7, 1955, effective on January 7, 1956. But a final solution was not easily attainable. As we shall note, infra, district courts are not in accord as to construction and application of § 4B. It also appears that subsequent to the time the Government proceedings were instituted against certain manufacturers of electrical equipment, and apparently as a result of those proceedings, 1700 or more civil actions, including the instant cases, have been instituted and are pending against such manufacturers in the district courts throughout the country, and we are informed that the outcome of those cases is in part dependent upon the judicial interpretation of § 4B. The Second Circuit considered the effect of the doctrine of fraudulent concealment upon a state statute of limitations applicable to a private antitrust suit under the Clayton Act in Moviecolor Limited v. Eastman Kodak Company, supra, 288 F. 2d 80. However, the precise question before us, to our knowledge, has not as yet received judicial interpretation by a court of appeals.
 
 
 7
 Because of the importance of the question, we permitted Kansas City Power & Light Company, Missouri Public Service Company, St. Joseph Light & Power Company, Kansas Power & Light Company, Kansas Gas & Electric Company, Western Light & Telephone Company, Inc., The Empire District Electric Company, and Central Kansas Power Company to file a brief as amici curiae; and Union Electric Company to file a brief as amicus curiae.[7]
 
 
 8
 It is neither necessary nor expedient to enumerate and give consideration to the numerous canons of construction to be applied in interpreting or construing a statute. The legislative will is the all-important or controlling factor, and has been said to be the vital part, the heart, soul, and essence of the law. 50 Am.Jur., Statutes, § 223, p. 200. See also United States v. Congress of Industrial Organization (1948), 335 U.S. 106, 112, 113, 68 S.Ct. 1349, 92 L.Ed. 1849; United States v. Cooper Corporation (1941), 312 U.S. 600, 605, 606, 61 S.Ct. 742, 85 L.Ed. 1071.
 
 
 9
 In searching for the will and intent, it is to be assumed that Congress was aware of established rules of law applicable to the subject matter of the statute and thus, upon enactment, the statute is to be read in conjunction with the entire existing body of law. 50 Am. Jur., Statutes, § 339, pp. 331, 332; Exploration Company v. United States (1918), 247 U.S. 435, 449, 38 S.Ct. 571, 62 L.Ed. 1200; United States v. McElveen (E.D.La.1959), 177 F.Supp. 355, 358, 359. In our view, this rule is of particular significance here because, as noted, infra, the fraudulent concealment doctrine, firmly established in Bailey v. Glover, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636, and adhered to in subsequent cases, was actually the subject of discussion by members of the Congress before § 4B was enacted in its present form.
 
 
 10
 The landmark case on fraudulent concealment is Bailey v. Glover, supra, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636, where the Supreme Court was required to determine whether the limitation statute of the Bankruptcy Act of 1867, providing that suit be brought within two years "from the time the cause of action accrued," had been tolled by the concealment of the fraudulent conduct which was the basis of the cause of action. A unanimous court made these pertinent pronouncements:
 
 
 11
 "We also think that in suits in equity the decided weight of authority is in favor of the proposition that where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." 88 U.S. at p. 348.
 
 
 12
 * * * * * *
 
 
 13
 "But we are of opinion, as already stated, that the weight of judicial authority, both in this country and in England, is in favor of the application of the rule to suits at law as well as in equity. And we are also of opinion that this is founded in a sound and philosophical view of the principles of the statutes of limitation. They were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure. And we see no reason why this principle should not be as applicable to suits tried on the common-law side of the court's calendar as to those on the equity side." 88 U.S. at p. 349.
 
 
 14
 * * * * * *
 
 
 15
 "* * * we hold that when there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing, or those in privity with him." 88 U.S. at pp. 349, 350.
 
 
 16
 Shortly after the opinion was rendered in Bailey v. Glover, supra, 88 U.S. (21 Wall.) 342, it was recognized and followed in Rosenthal v. Walker (1884), 111 U.S. 185, 190, 45 S.Ct. 382, 28 L.Ed. 395, and Traer v. Clews (1885), 115 U.S. 528, 537, 6 S.Ct. 155, 29 L.Ed. 467, which also involved the bankruptcy statute of limitations. Although we deem it unnecessary to trace the entire development of the fraudulent concealment doctrine, we shall briefly discuss the more significant cases.
 
 
 17
 Exploration Company v. United States, supra, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200, an action to cancel certain patents, was instituted more than six years after the date of the issuance of the patents. The Supreme Court held that the action was not barred by the statute of limitations, which provided, "That suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents."
 
 
 18
 In Exploration, as here, the contention was that under the clear language of the statute, all actions were barred unless commenced within six years from date of the issuance of the patent, regardless of the Government's diligence in attempting to discover the fraud. In disagreeing with this contention, the court observed that the true rule is established in federal jurisprudence by the decision in Bailey v. Glover, supra, 88 U.S. (21 Wall.) 342, which had never been overruled nor modified "in this court and has been approved and followed." (Citing cases). 247 U.S. at p. 448, 38 S.Ct. at p. 573. The court also observed:
 
 
 19
 "When Congress passed the act in question the rule of Bailey v. Glover was the established doctrine of this court. It was presumably enacted with the ruling of that case in mind. We cannot believe that Congress intended to give immunity to those who for the period named in the statute might be able to conceal their fraudulent action from the knowledge of the agents of the Government." 247 U.S. at p. 449, 38 S.Ct. at p. 573.
 
 
 20
 Holmberg v. Armbrecht (1946), 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743, was a suit in equity to enforce the liability imposed upon shareholders of a Joint Stock Land Bank by § 16 of the Federal Farm Loan Act, equal to one hundred percent of their holdings. The bank closed in May, 1932, and it was alleged that it was not until 1942 that petitioners learned of the concealment of the ownership of the stock by defendant. There was no federal statute of limitations and the court was confronted with the New York statute of limitations which barred such an action after ten years. The Court, discussing at some length the fraudulent concealment doctrine and its applicability to a federal case where a state statute of limitations is invoked, made this pertinent observation in the course of the opinion:
 
 
 21
 "* * * And so this Court long ago adopted as its own the old chancery rule that where a plaintiff has been injured by fraud and `remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.' Bailey v. Glover, 21 Wall. 342, 348; and see Exploration Co. v. United States, 247 U.S. 435 [38 S.Ct. 571]; Sherwood v. Sutton, 5 Mason 143.
 
 
 22
 "This equitable doctrine is read into every federal statute of limitation. If the Federal Farm Loan Act had an explicit statute of limitation for bringing suit under § 16, the time would not have begun to run until after petitioners had discovered, or had failed in reasonable diligence to discover, the alleged deception by Bache which is the basis of this suit. Bailey v. Glover, supra; Exploration Co. v. United States, supra; United States v. Diamond Coal Co., 255 U.S. 323, 333 [41 S.Ct. 335, 65 L.Ed. 660]." (327 U.S. at p. 397, 66 S.Ct. at p. 585.) (Emphasis supplied.)
 
 
 23
 The federal doctrine of fraudulent concealment, authoritatively recognized in many state jurisdictions, is discussed in 34 Am.Jur., Limitation of Actions, § 231, p. 187, where, after noting the reluctance of courts to acknowledge exceptions to a statute of limitations, this declaration appears:
 
 
 24
 "According to the majority rule, however, fraudulent concealment of a cause of action from the one in whom it resides, by the one against whom it lies, constitutes an implied exception to the statute of limitations, postponing the commencement of the running of the statute until discovery or reasonable opportunity of discovery of the fact by the owner of the cause of action; under this rule, one who wrongfully conceals material facts and thereby prevents discovery of his wrong or the fact that a cause of action has accrued against him is not permitted to assert the statute of limitations as a bar to an action against him, thus taking advantage of his own wrong, until the expiration of the full statutory period from the time when the facts were discovered or should, with reasonable diligence, have been discovered." 34 Am.Jur. 188.
 
 
 25
 See also, Annotation, 173 A.L.R. 578.
 
 
 26
 The doctrine as announced in Bailey v. Glover, supra, 88 U.S. (21 Wall.) 342, has been applied or recognized in private antitrust cases which were filed prior to the enactment of § 4B or which involved causes of action which accrued prior to the enactment of said statute. Moviecolor Limited v. Eastman Kodak Co. (2 Cir., 1961), 288 F.2d 80, cert. den. 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26; Crummer Co. v. Du Pont (5 Cir. 1958), 255 F.2d 425, cert. den. 358 U.S. 884, 79 S.Ct. 119, 3 L.Ed.2d 113; American Tobacco Co. v. People's Tobacco Co. (5 Cir. 1913), 204 F. 58; Norman Tobacco & Candy Co. v. Gillette Safety Razor Co. (N.D.Ala.1960), 197 F.Supp. 333; Klein v. Lionel Corp. (D.Del.1955), 130 F.Supp. 725; Winkler-Koch Engineering Co. v. Universal Oil Prod. Co. (S.D.N.Y. 1951), 100 F.Supp. 15. And Cf. Suckow Borax Mines Consol. v. Borax Consolidated (9 Cir. 1950), 185 F.2d 196, 209, cert. den. 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680, and Burnham Chemical Co. v. Borax Consolidated (9 Cir., 1948), 170 F.2d 569, cert. den. 336 U.S. 924, 69 S.Ct. 655, 93 L.Ed. 1086. See also Wiprud, Antitrust Treble Damage Suits Against Electrical Manufacturers: The Statute of Limitations and Other Hurdles, 57 N.W.U.L.Rev. 29, 48-50 (1962).
 
 
 27
 Not only was Congress presumptively aware of the doctrine thus enunciated and applied by the courts, 50 Am. Jur., Statutes, § 339, p. 331; Exploration Company v. United States, supra, 247 U.S. 435, 449, 38 S.Ct. 571; United States v. McElveen, supra, 177 F.Supp. 355, but as we shall demonstrate in our consideration of the legislative history of § 4B, Congress had actual knowledge of and affirmatively evinced a purpose of having the principle read into the statute.
 
 
 28
 Considerable controversy exists as to the weight to be attached to limitation bills considered by the Congress prior to the enactment in 1955 of H.R. 4954 which became § 4B. The prior bills introduced in the 81st Congress, First Session and Second Session, the 82nd Congress and the 83rd Congress contained varying provisions, some relating to discovery. To recount and review these provisions and the hearings thereon would unduly and unnecessarily burden and prolong this opinion. The record which we cite discloses the contents of the prior bills and the related committee proceedings.[8]
 
 
 29
 In part defendants' legislative history argument is based on the premise that the failure of Congress to enact proposed discovery provisions which were included in some of the prior bills, compellingly demonstrates congressional intent that the doctrine of fraudulent concealment should not be read into § 4B. This argument necessarily encompasses the proposition that "discovery" is synonymous in meaning to and must be equated with the doctrine of fraudulent concealment. Aside from the questionable import that the rejection of prior bills may have in determining congressional intent as to subsequently enacted legislation, a question we do not further explore, we are satisfied that there is a marked difference in tolling the statute of limitations because of the failure to discover, and tolling the limitation period because the parties who engaged in unlawful conduct (conspiracy or combination) are successful through affirmative action, in concealing the cause of action itself.[9] This distinction was recognized and applied in Burnham Chemical Co. v. Borax Consolidated, supra, 170 F.2d 569, 577, where the court applied the California doctrine that "mere failure by a defendant to disclose to a plaintiff the existence of the facts does not constitute `fraudulent concealment' of the cause of action unless a defendant is under a duty to disclose these facts, a situation not present in this case."
 
 
 30
 Dovberg v. Dow Chemical Co., supra, 195 F.Supp. 337, 342, held explicitly that "concealment is different from a failure to discover." In the post § 4B cases, cited, infra, where the district courts have applied the fraudulent concealment doctrine and ruled that it tolled the statute, this same distinction was explicitly or implicitly recognized.
 
 
 31
 Moreover, the legislative history of § 4B and particularly the proceedings which occurred on the floor of the House of Representatives prior to its passage, furnishes convincing proof that Congress itself recognized the difference between failing to discover and fraudulent concealment.
 
 
 32
 Representative Celler, Chairman of the Committee on the Judiciary which studied proposed antitrust legislation, and floor manager of H.R. 4954, was, by reason of his membership on the Judiciary Committee, thoroughly familiar with the prior unsuccessful bills above referred to, and was clearly cognizant of the body of decisions which had, with consistence, applied the fraudulent concealment doctrine to suspend limitation periods. During House consideration of H.R. 4954, Congressman Patman of Texas, a strong proponent of having a specific "discovery" clause written into the limitation provision, questioned Chairman Celler concerning the interpretation to be given to the bill. The following colloquy, found in Cong.Rec.H.R. 4954, 84th Cong. 1st Sess., 101 Cong.Rec. (1955), demonstrates that Congress had no intention of destroying the existing doctrine of fraudulent concealment:
 
 
 101 Cong.Rec. 5129:
 
 
 33
 "Mr. Patman: Does that 4 years apply to conspiracy cases? Suppose there is a conspiracy, and it is 10 years before the conspiracy is known.
 
 
 34
 "Mr. Celler: In the case of conspiracy or fraud, the statute only runs from the time of discovery.
 
 
 35
 "Mr. Patman: From the time of the discovery?
 
 
 36
 "Mr. Celler: In conspiracy cases and cases of fraud.
 
 
 37
 "Mr. Patman: And it is not the object or intention to change that at all?
 
 
 38
 "Mr. Celler: That is correct."
 
 
 39
 Later, Chairman Celler was again called upon to construe the bill when Congressman Keating, speaking in favor of H.R. 4954, desired corroboration of an opinion he gave in answer to a question propounded by Mr. Patman.
 
 
 101 Cong.Rec. 5130:
 
 
 40
 "Mr. Patman: Does the gentleman agree with the chairman that the 4-year limitation does not commence to apply in a conspiracy case until the conspiracy becomes known?
 
 
 41
 "Mr. Keating: I would want to have the law on that checked by the counsel for our committee. I have an impression that there have been decisions under the present conspiracy statute, which is not in any way interfered with by this legislation, to the effect that the statute of limitations does not begin to run until discovery of the conspiracy. But I would not want to make a positive assertion to the gentleman on that point without further investigation of the law.
 
 
 42
 "Mr. Patman: Notwithstanding the fact that the discovery was made years later?
 
 
 43
 "Mr. Keating: I would be happy to yield to the chairman of the committee, who may have investigated that precise point.
 
 
 44
 "Mr. Celler: Yes, I have. The statute only said from the time of discovery in that kind of case. The basis for my conclusion in that regard is the cases themselves. There are innumerable cases on that score.
 
 
 45
 "Mr. Keating: I am happy to have that enlightment."
 
 
 46
 Congressman Patman persisted in his effort to have a discovery provision written into the bill, but Chairman Celler firmly asserted the value of the implied fraudulent concealment doctrine as opposed to ordinary discovery.
 
 
 101 Cong.Rec. 5132, 5133:
 
 
 47
 "Mr. Celler: The statute of limitations will start running from the time the action accrues, not from the time of discovery. If you make it time of discovery, then you practically have no statute of limitations at all. An action could have accrued and the person aggrieved might not have heard of it for 20 years. Under the suggested amendment he would have a right to bring an action after 20 years, after the evidence will have been lost, and the defendant would be put in a rather deplorable situation in that regard. We provide that the 4-year statute shall start to run from the time of the accrual of damages, from the time the wrong was done, not from the time of discovery.
 
 
 48
 "Mr. Patman: Even in the case of fraud or conspiracy?
 
 
 49
 "Mr. Celler: No. In the case of fraud or conspiracy the statute of limitation only runs from the time of discovery.
 
 
 50
 "Mr. Patman: That is the point I wanted to make sure of. You are not attempting to change that particular part of it?
 
 
 51
 "Mr. Celler: Not at all."
 
 
 52
 Defendants would have us disregard the statements made by Chairman Celler and assert that debate on the floor of Congress cannot be used to determine the congressional intent. Federal Trade Commission v. Anheuser-Busch, Inc. (1960), 363 U.S. 536, 553, 80 S.Ct. 1267, 4 L.Ed.2d 1385; Pennsylvania R. R. Co. v. International Coal Mining Co. (1913), 230 U.S. 184, 198-199, 33 S.Ct. 893, 57 L.Ed. 1446. We take no issue with these cases but hold them to be inapplicable where, as here, there are no countervailing considerations which tend to dispute the merit of the statements. When a statute is of doubtful meaning, consistent statements made by sponsors of legislation and committee chairmen are useful aids of interpretation. Schwegmann Bros. v. Calvert Distillers Corp. (1951), 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035. In 2 Sutherland, Statutory Construction, § 5012, pp. 503-04 (3rd Ed. 1943), it is stated:
 
 
 53
 "* * * As the committeeman in charge has the duty of defending the bill, he has familiarized himself with the situation sought to be remedied by the bill and his statements may be taken as the opinion of the committee as to what is meant by the bill.
 
 
 54
 "Courts have taken a realistic view of legislative procedure and have excepted from the general rule excluding the use of statements in debate of individual legislators as to the meaning of the bill, the statements of the member of the committee in charge of the bill. His remarks upon presenting the bill to the house (citing cases) and the answers made by him to questions asked by members (citing cases) will be considered by the courts in construing provisions of the bill subsequently enacted into law. These statements are in the nature of supplemental committee reports and are entitled to the same weight accorded formal committee reports. (citing cases)." (Emphasis supplied.)
 
 
 55
 The statements of Congressman Celler are not rash, isolated opinions that are inconsistent with the legislative history, the prevailing committee reports, or the specific tolling provisions of § 5(b) of the Clayton Act (15 U.S.C.A. § 16(b)).[10] On the contrary, Mr. Celler's remarks are clarifying additions that reflect the careful diligence of a congressman who virtually lived with the problem during the course of several congressional sessions. A realistic appraisal of the circumstances justifies the attachment of weighty significance to Chairman Celler's statements, and to his expressed opinion that the prescription period would be suspended when there was fraudulent concealment which prevented discovery of the cause of action.
 
 
 56
 We have heretofore noted that prior to enactment of § 4B the fraudulent concealment doctrine received judicial sanction in antitrust cases. Since such enactment, the doctrine and its effect upon § 4B has been considered and ruled upon by at least seven United States District Courts in cases involving the same general factual circumstances here present and that originally precipitated the Government's action against the electrical companies. Four courts have ruled that fraudulent concealment suspends the time period: Atlantic City Electric Co. v. General Electric Co. (S.D.N.Y.1962), 207 F.Supp. 613; United States and Tennessee Valley Authority v. General Electric Co. (E.D.Pa.1962), 209 F.Supp. 197; Commonwealth Edison Co. v. Allis-Chalmers Manufacturing Co. (N.D.Ill., E.D. 1962), 210 F.Supp. 557; and Public Service Co. of Colorado v. Allen-Bradley Co., Allis-Chalmers Manufacturing Co. et al. (D.Colo.1962). Three, including the court from which these appeals come, have taken the opposite view: Brigham City Corp. v. General Electric Co. (D.Utah 1962), 210 F.Supp. 574; Public Service Co. of New Mexico v. A. B. Chance Co. (D.N.Mex.1962); and City of Kansas City, Missouri, v. General Electric Co. (W.D.Mo.1962), 210 F.Supp. 545.[11]
 
 
 57
 The Second Circuit in Moviecolor Limited v. Eastman Kodak Co., supra, 288 F.2d 80, cert. den. 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26, held the doctrine was applicable in an antitrust case where the New York statute of limitations was used as a measuring period. There, the cause of action accrued long prior to the enactment of § 4B and plaintiff's action was barred unless the time limit had been suspended because of fraudulent concealment. Since New York law did not recognize the doctrine and since the district court felt that the federal concealment rule was inapplicable, it held the action was barred. On appeal, the Court, speaking through Judge Friendly, held:
 
 
 58
 "We hold that the federal rule as to the effect of concealment on the running of a period of limitation applies to an action for treble damages under the Clayton Act even when a state statute is used to measure the period; but we affirm on the ground that the complaint does not contain allegations sufficient to bring plaintiff within this federal rule." 288 F.2d at p. 83. (Emphasis supplied.)
 
 
 59
 The Court indicated that while it could dispose of the appeal on the basis of the insufficiency of the complaint, it deemed it proper to deal also with the important question of law decided by the district court, inasmuch as the issue had been fully argued, there was a conflict in the decisions of the Southern District of New York, and the problem was likely to recur.
 
 
 60
 Defendants challenge the authoritativeness of Moviecolor, asserting that the portion of the opinion dealing with the question of fraudulent concealment is dictum. Apparently the same position was taken by the defendants in Atlantic City Electric Co. v. General Electric Co., supra, 207 F.Supp. 613. Judge Feinberg was of a different view. See 207 F.Supp. at 617. At 207 F.Supp. 618, the Judge stated:
 
 
 61
 "Moviecolor makes abundantly clear the view of the Court of Appeals that fraudulent concealment applies to Section 4B. It is this view which defendants say is dictum and may, therefore, be disregarded. Whether that view is dictum is questionable, since I believe it was an essential element in the process of decision. But, in any event, even if it is dictum, its controlling effect is undiminished."
 
 
 62
 Regardless of how the challenged portion of the opinion may be characterized, we are satisfied that it constitutes a sound exposition of the law, and that in the view of the Second Circuit, the limitation period of four years is not absolute but is subject to the well-settled doctrine of fraudulent concealment.
 
 
 63
 As an adjunct to their principal contention that legislative history reveals that Congress intended the statute to be absolute in its terms, defendants also argue in their brief that § 4B is a substantive statute of limitations and therefore limits a right which cannot be tolled by reading into it the fraudulent concealment doctrine.[12] Authority for defendants' position may be found in many cases in which the decision was to be based upon a rigid interpretation of the statute of limitations.[13] Thus, it has been held that where a statute creates a cause of action that did not exist before and at the same time establishes a period of limitations within which it must be brought, the running of the statute of limitations destroys the very right itself and thus cannot be tolled for any reason. In Adams v. Albany (S.D. Cal., N.D.1948), 80 F.Supp. 876, the district court stated:
 
 
 64
 "In fraud, the statute of limitations does not begin to run until after discovery. In a statute creating liability, the period for the institution of the action cannot be * * * overcome by allegations of fraud or concealment which prevented discovery." 80 F.Supp. at p. 881.
 
 
 65
 Against this contention, the argument is made, (1) that the statute is procedural, and (2) that the courts have rejected the substantive-procedural approach with all of its rigid characteristics. We are strongly impressed with the assertion that the statute is procedural. The very fact that the limitation period was added forty-one years after the enactment of the Clayton Act is indicative that § 4B was not part of a legislative scheme creating a right.[14] Enacted for the avowed purpose of bringing ordered uniformity out of chaos,[15] § 4B was a substitute for the admittedly procedural state statutes of limitations which could not have been borrowed in enforcement of a federal right if they were substantive. We are also mindful of the discussion on the floor of the House of Representatives as to the effect the statute would have upon pending suits. While not conclusive, we deem this colloquy of sufficient significance to set forth the pertinent part thereof, found in 101 Cong.Rec., 84th Cong. 1st Sess., p. 5131 (1955):
 
 
 66
 "Mr. Murray of Illinois: Then am I correct in assuming that this limitation provided by this amendment is strictly a procedural limitation and has nothing to do with substance?
 
 
 67
 "Mr. Quigley (a member of the House Judiciary Committee): It was the specific purpose of the committee in reporting this bill to in no way affect the substantive rights of individual litigants. It is simply a procedural change and suggested with the thought of setting up a uniform statute of limitations. That is the sole purpose."
 
 
 68
 While we believe that the controlling factor in determining whether the statute should be tolled for fraudulent concealment is congressional intent, irrespective of the doubtful procedural-substantive dichotomy,[16] if such a classification is significant, it is our view that the evidence supports plaintiff's contention that § 4B is procedural.
 
 
 69
 However, we are firmly convinced that even if § 4B is "substantive," the fraudulent concealment doctrine is applicable thereto. Congressional intent overrides any technical and conceptualistic approach. As stated in Scarborough v. Atlantic Coast Line R. Co., (4 Cir., 1949), 178 F.2d 253, 15 A.L.R.2d 491:
 
 
 70
 "We cannot see a distinction and a difference, so clear and so real, between the two classes of statutes of limitations — the remedial and the substantive — as to justify the courts in fully giving effect to fraud in tolling the statute in one type (remedial) and then flatly denying that effect to fraud in the other type (substantive). The ancient maxim that no one should profit by his own conscious wrong is too deeply imbedded in the framework of our law to be set aside by a legalistic distinction between the closely related types of statutes of limitations." 178 F.2d at p. 259.
 
 
 71
 In Glus v. Brooklyn Eastern District Terminal (1959), 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770, a case involving "estoppel" rather than fraudulent concealment, the Supreme Court held that the "substantive" statute would be tolled by defendant's wrongful acts.[17] An examination of the legislative history demonstrates to us that Congress, acting within its authority, intended that the maxim that no man may take advantage of his own wrong should be read into § 4B. "Deeply rooted in our jurisprudence this principle has been applied in many diverse classes of cases by both law and equity courts and has frequently been employed to bar inequitable reliance on statutes of limitations." Glus v. Brooklyn Eastern Terminal, 359 U.S. at pp. 232, 233, 79 S.Ct. at pp. 761, 762.
 
 
 72
 We have also considered the policy arguments advanced by defendants. They say that engrafting the fraudulent concealment doctrine on § 4B will recreate the very confusion and chaos which Congress sought to eliminate. Additionally, they assert that because of the large volume of antitrust cases growing out of the electrical conspiracies and combinations, the ability of the courts to efficiently function and to expeditiously dispose of litigation may be impaired and that Congress was aware of this danger when § 4B was enacted.
 
 
 73
 These arguments fade into insignificance in the light of other considerations. We are not aware of past confusion or chaos in the federal courts resulting from application of the fraudulent concealment doctrine to antitrust actions, or for that matter to other litigation. It is to be remembered that while a plaintiff may by proper allegations of fraudulent concealment initially avoid the time limitation bar of § 4B, it remains for the plaintiff to support such an allegation by competent and probative evidence. If plaintiff fails to carry the burden in this respect, the judicial processes are such as to insure orderly and efficient administration of justice, e. g., Moviecolor Limited v. Eastman Kodak Co., supra, 288 F.2d 80; Burnham Chemical Co. v. Borax Consolidated, supra, 170 F.2d 569; Gaetzi v. Carling Brewing Co., supra, 205 F. Supp. 615; Dovberg v. Dow Chemical Co., supra, 195 F.Supp. 337.
 
 
 74
 While lack of uniformity in the state statutes of limitations was undeniably a prime factor which motivated Congress to enact § 4B, our careful consideration of all phases of the instant controversy drives us irresistibly to the conclusion that Congress was equally concerned with efficient enforcement of the Clayton Act which certainly cannot be accomplished if the statute is given a literal construction. We are not persuaded to believe that Congress meant to proscribe and outlaw conspiracies and combinations in restraint of trade, only to reverse itself by enacting a statute of limitations that would reward successful conspirators. When the antitrust laws are violated, the wrongdoers who are successful in cloaking their unlawful activities with secrecy through cunning, deceptive and clandestine practices should not, when their machinations are discovered, be permitted to use the shield of the statute of limitations to bar redress by those whom they have victimized.
 
 
 75
 In summary, we hold that the fraudulent concealment doctrine is to be read into the statute of limitations so that under circumstances here allegedly present, the limitation period begins to run from the time that plaintiff by the exercise of reasonable diligence, discovers or should have discovered the cause of action. This holding requires that the judgments of dismissal be reversed and that the causes be remanded for further proceedings.
 
 
 
 Notes:
 
 
 [1]
 § 4 (15 U.S.C.A. § 15) provides: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."
 § 1 of the Sherman Act (15 U.S.C.A. § 1) provides in summary that every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade shall be illegal.
 
 
 [2]
 In summary, the fraudulent concealment paragraphs of the complaints alleged that from the inception of the conspiracies in 1948 until at least 1960, defendants used such active means and methods to conceal the conspiracies as secret meetings held throughout the country, the use of public pay telephones, calls made to residences of company representatives rather than to their offices, the use of plain envelopes without return addresses, and the concealment or destruction of records relating to the conspiracies. Plaintiff further alleged that during the conspiracies, defendants used an intricate "phase of the moon" formula and code numbers as a means to rig price quotations and bids to purchasers, including plaintiff, while maintaining an outward appearance of competition. Plaintiff concluded that defendants' deliberate acts of concealment prevented plaintiff, even by the exercise of reasonable diligence, from learning of the conspiracies until after the institution of the Government proceedings
 
 
 [3]
 The trial court was not entirely free from doubts as to the correctness of its ruling, and stated in its memorandum opinion that "(a)t this district court level, and in the present state of the authorities, the question could honestly be decided either way. In fact, the decisions of the district courts on the general question have been conflicting. In order to hasten the full review of the legal questions by the highest court by which they are reviewable, this Court has decided to sustain both the motion to dismiss and the motion for summary judgment, * * *."
 The actions were separately treated in the lower court; separate judgments were entered, and separate notices of appeal were filed. Both cases present the identical question. In this court the parties treated them as one case. Accordingly, we dispose of both with one opinion.
 
 
 [4]
 § 5(b) of the Clayton Act (15 U.S.C.A. § 16(b)), enacted at the same time as § 4B and indirectly related to this case, provides:
 "Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: Provided, however, That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued."
 
 
 [5]
 Some authorities distinguish between "interpretation," determining the meaning of words, and "construction," determining the application of words to the facts in litigation. Sutherland, Statutory Construction, Vol. 2, § 4504 (3d Ed. 1943) and 50 Am.Jur., Statutes, § 218, p. 197, point out that the words are often used interchangeably and without distinction, and we will follow that course throughout this opinion
 
 
 [6]
 Moviecolor Limited v. Eastman Kodak Company (2 Cir., 1961), 288 F.2d 80, cert. den. 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26; Grant W. Wiprud, Antitrust Treble Damage Suits Against Electrical Manufacturers: The Statute of Limitations and Other Hurdles, 57 Northwestern University Law Review 29, 32 (1962); House Report No. 422, 84th Cong., 1st Sess. [to accompany H.R. 4954] pp. 1, 6, 7 (1955); Senate Report No. 619, 84th Cong., 1st Sess. [to accompany H.R. 4954] pp. 4, 5 (1955), U.S.Code Congressional and Administrative News 1955, p. 2328
 
 
 [7]
 The amici curiae above named have suits pending in the Western District of Missouri before Honorable William H. Becker, who decided this case, and apparently Judge Becker has indicated that he will rule the limitation issue in conformity with the result reached in this case. Union Electric Company has 8 suits pending in the Eastern District of Missouri in which the question of the statute of limitations is an issue. The briefs thus filed support the position of the plaintiff herein
 
 
 [8]
 Hearings Before Subcommittee of Senate Committee on the Judiciary. 81st Cong., 1st Sess. [on S.1910] Pts. 1 and 2 (1949) (S.1910 is identical with H.R. 4985)
 Hearings Before Subcommittee on Study of Monopoly Power of the House Committee on the Judiciary, 81st Cong., 2d Sess. [on H.R. 7905] Ser.No.14, Pt. 5 (1950).
 House Report No. 2467, from Committee on the Judiciary, 81st Cong., 2d Sess. [to accompany H.R. 8763] (1950).
 
 
 [96]
 Cong.Record, 81 Cong. 2d Sess. (on H.R. 8763), pp. 10437-10444 (July 17, 1950)
 Hearings Before Subcommittee on Study of Monopoly Power of the House Committee on the Judiciary, 82nd Cong., 1st Sess. [on H.R. 3408] Ser.No.1, Pt. 3 and Supp. to Pt. 3 (1951). (Identical with H.R. 1323).
 82nd Cong., 1st Sess. [on H.R. 1986].
 82nd Cong., 1st Sess. [on H.R. 109].
 83rd Cong., 1st Sess. [on H.R. 467].
 
 
 [9]
 Fraudulent concealment comprehends two elements — the use of fraudulent means by the party who raises the ban of the statute and successful concealment from the injured party. In Bailey v. Glover, supra, 88 U.S. (21 Wall.) 342, the Supreme Court held the doctrine applicable when there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the basis of the suit, and when the fraud has been concealed or is of such character as to conceal itself
 In Annotation, 173 A.L.R. 578 (1948), the author states: "* * * [T]he general trend of the decisions is in support of the rule that where a party against whom a cause of action has accrued in favor of another, by actual fraudulent concealment prevents such other from obtaining knowledge thereof, or the fraud is of such a character as to conceal itself, the statute of limitations will begin to run only from the time the right of action is discovered or, by the exercise of ordinary diligence, might have been discovered." Compare also Burnham Chemical Co. v. Borax Consolidated, supra, 170 F.2d 569; Gaetzi v. Carling Brewing Co. (E.D.Mich., S.D.1962), 205 F.Supp. 615; Dovberg v. Dow Chemical Co. (E.D.Pa. 1961), 195 F.Supp. 337.
 
 
 [10]
 § 5(b), 15 U.S.C.A. § 16(b), appearing in margin, footnote 4, supra, provides for a specific tolling provision during pendency of a Government action and for one year thereafter. Defendants argue that enactment of § 5(b) bears strongly upon the intent of Congress with regard to § 4B. They contend that if Congress intended that fraudulent concealment would operate to suspend the four-year period, it would have so provided by writing such an exception into the statute. This result does not necessarily follow. The doctrine of fraudulent concealment had become firmly imbedded as a part of our federal jurisprudence at the time these statutes were enacted, and, as we have shown, it was plainly the intent of Congress that this doctrine should constitute an implied exception to § 4B. In order, however, to toll the period of limitations during pendency of Government proceedings, it was necessary for Congress to so provide by writing such an exception into the law
 
 
 [11]
 In addition to the electrical cases, other recent decisions have construed § 4B to allow tolling of the limitation period for fraudulent concealment: Dovberg v. Dow Chemical Co., supra, 195 F.Supp. 337; Gaetzi v. Carling Brewing Co., supra, 205 F.Supp. 615
 
 
 [12]
 Defendants rely upon a theory first propounded in The Harrisburg (1886), 119 U.S. 199, 75 S.Ct. 140, 30 L.Ed. 358, a case in which the court strictly enforced a one-year statute of limitation where no excuse was offered to show why there had been a delay in bringing suit. The court stated:
 "The statutes create a new legal liability, with the right to a suit for its enforcement, provided the suit is brought within twelve months, and not otherwise. The time within which the suit must be brought operates as a limitation of the liability itself as created, and not of the remedy alone. * * * The liability and the remedy are created by the same statutes, and the limitations of the remedy are, therefore, to be treated as limitations of the right." 119 U.S. at p. 214, 7 S.Ct. at p. 147.
 
 
 [13]
 United States ex rel. Texas Portland Cement Co. v. McCord (1914), 233 U.S. 157, 34 S.Ct. 550, 58 L.Ed. 893; Davis v. Mills (1904), 194 U.S. 451, 24 S.Ct. 692, 48 L.Ed. 1067; Pollen v. Ford Instrument Co. (2 Cir., 1940), 108 F.2d 762
 
 
 [14]
 Brushing off the fact that the limitation period was added forty-one years after passage of the Act, defendants assert that the ruling of The Harrisburg, supra, applies even if the statute of limitations is in a separate statute from the one that creates the right. Midstate Horticultural Co. v. Pennsylvania R. Co. (1943), 320 U.S. 356, 64 S.Ct. 128, 87 L.Ed. 1695; Davis v. Mills, supra, 194 U.S. 451, 24 S.Ct. 692, 48 L.Ed. 1067
 
 
 [15]
 See, H.R.Rep.No.422, 84th Cong., 1st Sess. [to accompany H.R. 4954] pp. 1, 6, 7 (1955); S.Rep.No.619, 84th Cong., 1st Sess. [to accompany H.R. 4954] pp. 1, 4, 5 (1955); 101 Cong.Record, 84th Cong. 1st Sess., p. 5129 (1955)
 
 
 [16]
 In the course of oral argument in this Court, Mr. Blackmar, counsel for defendants, stated: "We agree with Mr. Wilson's (counsel for plaintiff) statement of the issue. The question is whether Section 4B of the Clayton Act can be tolled under any kind of a claim of concealment, fraudulent concealment, concealed conspiracy, however you would phrase it. We submit this question absolutely. It was the question ruled by Judge Becker and by the other courts
 "We also agree with the statement of Mr. Mauer (counsel for plaintiff) that the question for the Court to decide is the question of legislative intent." (Emphasis supplied.)
 
 
 [17]
 See also Anno., 15 A.L.R.2d 500, 502 (1951), wherein the writer concludes that there is a definite conflict of authority as to whether a "substantive" statute may be tolled because of fraudulent concealment